## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY, *et al.*,** | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, Plaintiff Electronic Privacy Information Center

respectfully moves for entry of a preliminary injunction enjoining Defendant Department

Justice and its component, the Federal Bureau of Investigation ("FBI"), from continuing to deny

Plaintiff expedited processing of Plaintiff's Freedom of Information Act request for records

concerning the FBI's acquisition and use of passenger data from commercial airlines.

In support of its motion, Plaintiff proffers the accompanying Declaration of

Marcia Hofmann, a memorandum of points and authorities, and a proposed order.

Pursuant to Local Rule 65.1(d), Plaintiff requests a hearing on this motion at the Court's

earliest convenience.

Respectfully submitted,

_____

MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION
      CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY, *et al*.,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this

memorandum of points and authorities in support of its motion for a preliminary injunction.

**Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

seeking the expedited processing and release of agency records concerning the efforts of the

United States government to obtain personal information about air passengers from commercial

airlines in the aftermath of the September 11, 2001 terrorist attacks.[1]  There has been widespread

media interest in this issue, and editorials and news articles have raised serious questions about

the privacy implications and propriety of such activity.  As such, the requested information fits

squarely within the narrow category for which Congress has mandated expedited processing.

---

[1] Plaintiff's complaint names as Defendants the Transportation Security Administration ("TSA"), the Department of Homeland Security (TSA's parent agency) and the Department of Justice ("DOJ").  The complaint alleges that TSA, despite its decision to grant Plaintiff's requests for expedited processing of three FOIA requests concerning acquisition of airline passenger data, has violated the applicable statutory time limits with respect to those requests.  Plaintiff's *entitlement* to expedited processing is thus not at issue with respect to the TSA requests, and this motion solely addresses the decision of DOJ component Federal Bureau of Investigation to deny plaintiff's request to expedite the processing of one FOIA request submitted to the Bureau.

In violation of the expedited processing provisions contained in the FOIA and Defendant Department of Justice's own regulations, the Federal Bureau of Investigation ("FBI") has denied Plaintiff's request for expedited processing of requested records.  The FBI's failure to grant Plaintiff's request is substantively flawed.  Because time is at the essence of Plaintiff's rights and Defendant DOJ's obligations, Plaintiff seeks the Court's expedited, *de novo* consideration of this matter and entry of an order compelling Defendant DOJ to process and disclose the requested records immediately.

### Statement of Facts

**A. Airline Disclosures of Passenger Information to Defendant FBI**

On April 28, 2004, EPIC received a document from the National Aeronautics and Space Administration ("NASA") in response to a Freedom of Information request indicating that Northwest Airlines "gave the FBI one year's [passenger] data on 6000 CD's."  Exhibit 1 (attached to Declaration of Marcia Hofmann ("Hofmann Decl.")).  The New York Times subsequently published a front-page article on the disclosure, revealing that "in the days after the Sept. 11 terrorist attacks in 2001, the nation's largest airlines, including American, United and Northwest, turned over millions of passenger records to the Federal Bureau of Investigation." Exhibit 2 (attached to Hofman Decl.).

**B. Plaintiff's Request For Expedited FOIA Processing**

On May 6, 2004, Plaintiff sent a letter to the FBI requesting the following agency records:

> [A]ny records concerning, involving or related to the FBI's acquisition of passenger data from any airline since September 11, 2001.  This request includes, but is not limited to, any records discussing the legal requirements governing Bureau access and use of air passenger data.

Exhibit 3 at 1 (attached to Hofmann Decl.).

Plaintiff requested that the processing of its FOIA request be expedited pursuant to 5

U.S.C. § 552(a)(6)(E) because the request pertained to a matter about which there was "an

urgency to inform the public about an actual or alleged federal activity," and the request was

made by "a person primarily engaged in disseminating information."  *Id.*

Plaintiff provided extensive evidence to support its assertion that there existed "an

urgency to inform the public about an actual or alleged federal activity."  *Id.*  Plaintiff

demonstrated that the national news media had shown significant interest in the FBI's collection

of passenger data:

> On May 1, 2004, the New York Times published a front page article on the
> disclosure, reporting that "in the days after the Sept. 11 terrorist attacks in 2001,
> the nation's largest airlines, including American, United and Northwest, turned
> over millions of passenger records to the Federal Bureau of Investigation."  John
> Schwartz and Micheline Maynard, The N.Y. Times, *F.B.I. Got Records on Air
> Travelers*, May 1, 2004, at A1.  This article was republished in the Star Tribune
> (Minneapolis, MN), Omaha World-Herald, Atlanta Journal Constitution, Pioneer
> Press (Saint Paul, MN), The Ledger (Lakeland, FL), Los Angeles Daily News,
> San Jose Mercury News, Ocala Star-Banner (Ocala, FL), Fort Worth Star
> Telegram, Spartanburg Herald Journal (Spartanburg, SC), Times-Picayune (New
> Orleans, LA), Chattanooga Times Free Press (Chattanooga, TN), Kansas City
> Star, and Business Times (Singapore).  On May 2, 2004, the Washington Post
> also published a story about the airlines' disclosures of passenger data to the FBI.
> Sara Kehaulani Goo, *Airlines Confirm Giving Passenger Data to FBI After 9/11*,
> May 2, 2004, at A14.  This article was reprinted in the Seattle Times, Indianapolis
> Star, and Oakland Tribune (Oakland, CA).  The Wall Street Journal also
> published a story on the disclosure.  Amy Schatz, *Airline Disclosure of Traveler
> Data Exceeded Prior Acknowledgements*, Wall Street Journal, May 3, 2004, at
> A4.

*Id.* at 2.

In support of its request for expedited processing, Plaintiff also discussed the privacy issues

raised by the FBI's activities:

> There is a particular urgency for the public to obtain information about the FBI's
> acquisition of air passenger information from airlines.  The government activity at
> issue here — the sweeping collection of massive amounts of passenger

3

information without any suspicion that the vast majority of those affected have committed wrongdoing — raises serious privacy implications, particularly in light of evidence that numerous airlines have disclosed passenger data to various government agencies and contractors.  Prior to the most recent disclosure, American Airlines became the third airline, after JetBlue Airways and Northwest Airlines, to admit turning over passenger information at the government's request. *See* Press Release, AMR Corporation, American Airlines Passenger Data Released In June 2002 (Apr. 9, 2004).  The NASA document obtained by EPIC under the FOIA and subsequent news stories indicate that such disclosures are more commonplace and widespread than previously thought.

*Id.*

Plaintiff also noted that Congress has expressed serious concern about prior revelations detailing the acquisition of airline passenger information by the Transportation Security Administration ("TSA") and NASA:

Indeed, government collection of passenger data from airlines is the focus of increasing Congressional inquiry.  The Chairman and Ranking Member of the Senate Committee on Governmental Affairs have twice called on the Transportation Security Administration to explain its role in obtaining information from two separate airlines (see attached press releases) (noting that government acquisition of passenger data involves "privacy of personal information" and thus requires "openness and public trust").  Furthermore, members of the Senate Committee on Commerce, Science and Transportation repeatedly asked NASA Administrator Sean O'Keefe about NASA's acquisition of passenger information from Northwest Airlines during a hearing on the Bush administration's proposed space exploration program.  *See U.S. Senate Committee on Commerce, Science and Transportation Holds a Hearing on Administration Space Initiative*, 108th Cong. (Jan. 27, 2004).

*Id.* at 3.  Furthermore, Plaintiff noted that both TSA and NASA have repeatedly granted expedited processing for records concerning agency acquisition and use of passenger data:

Other agencies have recognized the urgency to inform the public about government collection and use of passenger data by granting expedited processing for requests involving such matters.  EPIC has submitted four FOIA requests to the Transportation Security Administration seeking information about that agency's role in the collection and use of passenger data from various airlines.  All of these requests have been granted expedited processing.  Furthermore, NASA granted expedited processing of two requests EPIC submitted seeking information about the agency's acquisition of passenger information and subsequent passenger profiling research.

*Id.* [2]

In support of its assertion that it is "primarily engaged in disseminating information" within the meaning of the FOIA and DOJ regulations, Plaintiff addressed its news collection and dissemination activities:

> EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues. The site also features scanned images of documents EPIC obtains under the FOIA. Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule). It has been published continuously since 1996, and an archive of past issues is available at our Web site. Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. A list of EPIC publications is available at our Web site.

*Id.* at 3-4. Finally, Plaintiff noted that "the U.S. District Court for the District of Columbia has held that EPIC is a 'news media' requester under the FOIA." *Id.* at 4 (citing *Electronic Privacy Information Center v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003)).

The FBI sent Plaintiff a letter dated May 19, 2004, denying Plaintiff's request for expedited processing. The letter stated, *inter alia*,

> Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied because the primary activity of EPIC does not appear to be information dissemination, which is requested for a requester to qualify for expedited processing. Moreover, you
>
> have not demonstrated any particular urgency to inform the public about the subject matter of your request beyond the public's right to know generally.

---

[2] The same day Plaintiff submitted its FOIA request to the FBI, Plaintiff amended its request to state that Plaintiff had actually submitted "*three* FOIA requests to the Transportation Security Administration seeking information about that agency's role in the collection and use of passenger information from various airlines. All three have been granted expedited processing." Exhibit 8 (attached to Hofmann Decl.) (emphasis in original).

Exhibit 9 (attached to Hofmann Decl.).

## ARGUMENT

The issues raised in this motion are simple and not subject to serious dispute.  In

compliance with the FOIA and applicable DOJ regulations, Plaintiff requested expedited

processing of requests seeking information concerning the FBI's acquisition and use of large

quantities of airline passenger information.  In support of its request, Plaintiff submitted specific

and relevant information that clearly established its entitlement to expedited processing.  In

violation of the statutory and regulatory requirements for expedited processing, the FBI denied

Plaintiff's request.  The Bureau's action is clearly unlawful and should be enjoined.

### I. **The Court has Jurisdiction to Grant the Requested Relief**

The Court's jurisdiction to consider this matter and grant appropriate relief is clear.  The

FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited processing . . .
> shall be subject to judicial review under paragraph (4), except that the judicial
> review shall be based on the record before the agency at the time of the
> determination.

5 U.S.C. § 552(a)(6)(E)(iii).  The referenced judicial review provision states, in pertinent part:

> On complaint, the district court of the United States . . . in the District of
> Columbia, has jurisdiction to enjoin the agency from withholding agency records
> and to order the production of any agency records improperly withheld from the
> complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).[3]

Plaintiff's claim is ripe for adjudication, as all applicable administrative remedies have

been exhausted.  This Court has expressly and consistently held that a party requesting expedited

---

[3] This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("The district courts shall
have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of
the United States.").

processing of a FOIA request may seek judicial review of an agency denial of expedition without first submitting an administrative appeal of such denial. *See, e.g.*, *Al-Fayed v. CIA*, C.A. No. 00-2092, 2000 U.S. Dist. LEXIS 21476, at **7-8 (D.D.C. Sept. 20, 2000), *aff'd on other grounds*, 254 F.3d 300 (D.C. Cir. 2001) ("Nothing in the statute or its legislative history . . . mandates administrative appeals for all denials of expedited processing before an applicant may seek judicial review."); *American Civil Liberties Union v. Dep't of Justice*, C.A. No. 03-2522, 2004 U.S. Dist. LEXIS 9381, at *10-11 (D.D.C. May 10, 2004) (administrative appeal is not a "prerequisite for judicial review," thus "plaintiffs' failure to appeal the FBI's refusal to expedite their request does not preclude judicial review of the decision") (emphasis omitted); *Electronic Privacy Information Center v. Dep't of Justice*, C.A. No. 03-2078, slip op. at 4-5 (D.D.C. Dec. 19, 2003), *appeal docketed*, No. 04-5063 (D.C. Cir. Feb. 27, 2004) (attached to Hofmann Decl. as Exhibit 10) (holding that EPIC was not required to submit an administrative appeal of DOJ's adverse determination on expedited processing before seeking judicial review).

As the FOIA provides, in reviewing the Bureau's actions, "the court shall determine the matter *de novo*." 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed*, 254 F.3d at 308 ("[A] district court must review *de novo* an agency's denial of a request for expedition under FOIA.").

## II. <u>Plaintiff is Entitled to Entry of a Preliminary Injunction</u>

In considering Plaintiff's request for the entry of a preliminary injunction compelling Defendant DOJ to expedite the processing of Plaintiff's FOIA request, the court must assess "[t]he familiar factors affecting the grant of preliminary injunctive relief — 1) likelihood of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on . . . others' interests, and 4) the public interest." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958), and *A*

*Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969)).  Consideration of these factors in this case establishes Plaintiff's entitlement to injunctive relief.

### A. **Plaintiff is Likely to Prevail on the Merits**

Given the clarity of Plaintiff's entitlement to expedited processing of its request, Plaintiff's likelihood of prevailing on the merits is extremely high.  In assessing Plaintiff's likelihood of success, the Court must consider the merits of one discrete issue: whether Plaintiff has satisfied the statutory and regulatory criteria for expedited processing.  Plaintiff is likely to prevail on this issue.

### 1. **The "Urgency to Inform" Standard**

The FOIA provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need and . . . in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" includes, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to the statutory directive, the DOJ issued regulations (applicable to the FBI and other DOJ components) establishing four grounds for expedited processing, only one of which is relevant here.  That provision states that "requests . . . will be taken out of order and given expedited treatment whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information[.]"  28 C.F.R. § 16.5(d)(1)(ii).  Plaintiff provided the FBI with clear evidence of its entitlement to expedited processing under the "urgency to inform" standard set forth in DOJ's regulations.

## 2. __Plaintiff's Request Meets the "Urgency to Inform" Standard__

Plaintiff satisfies the threshold requirement of the "urgency to inform" standard because it is "primarily engaged in disseminating information" within the meaning of the FOIA and DOJ regulations.  This Court has expressly "conclude[d] that EPIC is indeed 'primarily engaged in disseminating information' for the purposes of expediting [a FOIA] request" under the same DOJ regulation that is applicable here.  *American Civil Liberties Union*, 2004 U.S. Dist. LEXIS 9381, at *12 n.5 (citing *Electronic Privacy Information Center v. Dep't of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003) (holding that EPIC qualifies as a "news media" requester under the FOIA's fee provisions)).[4]  Notwithstanding the FBI's bald assertion that "the primary activity of EPIC does not appear to be information dissemination," Plaintiff clearly qualifies as the type of requester entitled to expedited processing.[5]

Plaintiff has also demonstrated beyond question that its FOIA request pertains to a matter about which there is an "urgency to inform the public concerning actual or alleged federal government activity."  The D.C. Circuit has held that

> in determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant

---

[4]  Given that both EPIC and Defendant DOJ were parties in *American Civil Liberties Union*, the doctrine of *res judicata* would bar any attempt by DOJ or the FBI to relitigate the issue here.  *See generally Allen v. McCurry,* 449 U.S. 90, 94 (1980);  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

[5]  Lest there be any doubt on the matter, Plaintiff demonstrated to the FBI that it systematically disseminates information to the public through several means.  Plaintiff maintains a heavily visited Web site that highlights the "latest news" concerning privacy and civil liberty issues.  It has published since 1996 a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets.  Plaintiff also publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.  *See* Exhibit 3 at 3-4.  Plaintiff's news collection and publication activities demonstrate that it is "primarily engaged in disseminating information."

recognized interest; and (3) whether the request concerns federal government activity.

*Al-Fayed*, 254 F.3d at 310.  All three factors are satisfied here.

First, Plaintiff's request for information regarding the FBI's acquisition and use of passenger data clearly "concerns a matter of current exigency to the American public."  *Id.*  The D.C. Circuit has held that, to meet that test, a requester must show "substantial interest, either on the part of the American public or the media," evidenced by "news reports."  *Id.* at 311.  Plaintiff amply demonstrated that its FOIA request implicates serious questions about the Bureau's efforts to obtain passenger information that have received considerable news media attention in recent weeks.  In its May 6, 2004 request letter, Plaintiff provided the FBI with a list of twenty news organizations from across the country that carried articles regarding the Bureau's acquisition of passenger data, published in a five-day period preceding the FOIA request.  Exhibit 3 at 2.  The list included a front-page story in the New York Times as well as articles in the Washington Post and Wall Street Journal.  *Id.*  Plaintiff thus demonstrated that the FBI's acquisition of passenger data is a matter of "current exigency to the American public."

Second, it is clear that "the consequences of delaying a response would compromise a significant recognized interest."  *Al-Fayed*, 254 F.3d at 310.  As the New York Times reported (in an article Plaintiff cited to the FBI) five days before Plaintiff submitted its FOIA request, "[t]he sharing of airline passenger data with the government has sparked some of the most contentious conflicts underlying the uneasy balance between privacy and security in the post-Sept. 11 world."  John Schwartz and Micheline Maynard, *Airlines Gave F.B.I Millions of Records on Travelers After 9/11*, New York Times, May 1, 2004, at A1 (attached to Hofmann Decl. as Exhibit 2).  Disclosure of information about this uneasy balance is important for reasons other than merely the "public's right to know."  *Cf. Al-Fayed*, 254 F.3d at 310.

As Plaintiff noted in its FOIA request, members of Congress have already voiced serious concern about the privacy implications of agency acquisition of vast quantities of passenger information.  Exhibit 3 at 3.  In a February 13, 2004, letter to Asa Hutchinson, Under Secretary for Border and Transportation Security of the Department of Homeland Security, Senate Governmental Affairs Committee Chairman Susan Collins and Ranking Member Joseph Lieberman called on the Department to explain its role in obtaining sensitive airline passenger data.  The Senators wrote that government acquisition and use of airline passenger data

> raises several privacy-related concerns.  We support the development of effective new systems and technologies to protect homeland and national security.  However, such systems must have appropriate safeguards to ensure the privacy of personal information and *must be developed in an atmosphere of openness and public trust* . . . .
>
> Americans want to be full partners with their government in the war against terrorism.  *If the government needs their private information to help wage that war, then they deserve to know how the government obtained and will be using that information.*

Press Release, United States Senate Committee on Governmental Affairs, "Senators Call on TSA to Explain its Role in Obtaining Sensitive Airline Passenger Information" (Feb. 13, 2004) (attached to Hofmann Dec. as Exhibit 6) (emphasis added).

One month later, on April 14, 2004, following revelations "that American Airlines and potentially other carriers were asked to provide [airline] passenger information, possibly in violation of the Privacy Act," Senators Collins and Lieberman again wrote to Secretary Hutchinson.  They stated that they were "concerned by potential Privacy Act and other implications of this reported incident" and "ask[ed] the Department to *disclose all instances of which it is aware where other agencies received PNR [passenger name record] data from airlines* or their vendors."  Press Release, United States Senate Committee on Governmental Affairs, "Senators Collins, Lieberman Ask TSA: What Other Airlines Have Been Contacted and

Asked for Passenger Information?" (Apr. 14, 2004) Exhibit 7 (attached to Hofmann Decl.)

(emphasis added).  It is thus clear that Congressional concern over the secret acquisition of

passenger data extends to *all* federal agencies.

The FBI's collection of airline passenger data, at issue here, is perhaps the most

significant such collection yet disclosed.  As Plaintiff noted in its request, it constitutes "the

sweeping collection of massive amounts of passenger information without any suspicion that the

vast majority of those affected have committed wrongdoing."  Exhibit 3 at 2.  *See also* Exhibit 2

("Airline industry officials said they could not remember another such sweeping request.").   It is

vital that lawmakers, as well as their constituents, be as informed as possible about the Bureau's

collection of passenger information as Congress considers the privacy and civil liberties

implications of such investigative techniques.  Indeed, this Court recently recognized that the

disclosure of material that would "inform" the debate on relevant and timely Congressional

deliberations, when there is demonstrated "newsworthiness" in the underlying issue, is "more

than sufficient to satisfy" the "urgency to inform" standard.  *American Civil Liberties Union*,

2004 U.S. Dist. LEXIS 9381, at *16-17.

The current and ongoing debate on government acquisition and use of passenger data

clearly would be hampered by further delay in the FBI's response to Plaintiff's request.  The

Supreme Court has long recognized our democracy's interest in the 'uninhibited, robust, and

wide-open' debate about matters of public importance that secures an informed citizenry."

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985), quoting *New York

Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  *See also Board of Educ. v. Pico*, 457 U.S. 853,

876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to

participate in governmental affairs.").  This recognized interest clearly would be compromised

by further delay in the disclosure Plaintiff seeks.

Finally, Plaintiff's request indisputably concerns Federal government activity.  The FBI acknowledged to the New York Times that it requested passenger data from numerous airlines "under the bureau's general legal authority to investigate crimes and that the requests were accompanied by subpoena, not because that was required by law or because the bureau expected resistance from the airlines, but as a 'course of business' to ensure that all proper procedures were followed."  Exhibit 2.

As Plaintiff noted in its request, both TSA and NASA have repeatedly granted expedited processing for Plaintiff's requests for records concerning agency acquisition and use of airline passenger data.  Exhibit 3 at 3.  Thus, two other agencies have recognized that government collections of passenger data from airlines are matters about which there is an "urgency to inform the public."  *Id*.  In its request to the FBI, Plaintiff clearly made the same showing.  *See generally, Al-Fayed* 254 F.3d at 306 ("Because 'compelling need' . . . sets a government-wide rather than agency-specific standard," there is a need for uniform — not "disparate" — application across agencies.).

Because Plaintiff has demonstrated that it is "primarily engaged in disseminating information" and that an "urgency to inform the public" exists "concerning actual or alleged Federal Government activity," it is legally entitled to expedited processing of its FOIA request.

**B. Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief**

Unless the Bureau's unlawful failure to expedite the processing of Plaintiff's FOIA request is immediately enjoined, Plaintiff will suffer irreparable harm.[6]  The very nature of the right that Plaintiff seeks to vindicate in this action — expedited processing — depends upon timeliness.  The courts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases where "time is of the essence."  *See, e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Under the statutory scheme Congress established in the FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of Plaintiff's request will cause irreparable injury. Unless Defendant DOJ and the FBI are ordered to process Plaintiff's request immediately, Plaintiff's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established legal right, any further delay in the processing of Plaintiff's FOIA request will irreparably harm Plaintiff's ability (and that of the public) to obtain information vital to the current and ongoing debate surrounding the governement's acquisition and use of airline passenger information.  Hofmann Decl., ¶¶ 17-21.  As this Court has noted, a private party (such as Plaintiff) "suffers an injury-in-fact when . . .

---

[6] Given the strength of Plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As the D.C. Circuit has held,

> [i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.  An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (citation omitted).  Nonetheless, Plaintiff's showing of harm here is substantial.

denied information that must be disclosed pursuant to statute." *Walker v. Cheney*, 230 F. Supp.
2d 51, 66 n.10 (D.D.C. 2002) (citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *Pub. Citizen v.
Dep't of Justice*, 491 U.S. 440, 449 (1989)).

 Because time is of the essence in this matter, Plaintiff will be irreparably harmed unless
the Court acts now, "when it [is] still possible to grant effective relief," and before "all
opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266, Int'l Ass'n of
Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).

### C. Injunctive Relief Will Not Burden Others' Interests

 Defendant DOJ and the FBI cannot be said to be "burdened" by a requirement that they
comply with the law.  The immediate relief Plaintiff seeks will require nothing more of the
government than what the law already mandates — the expedited processing of Plaintiff's FOIA
request.  Nor will the requested relief burden the interests of other parties who have submitted
FOIA requests to the FBI in any manner beyond that foreseen by Congress.  In providing for
expedited processing of qualifying requests, Congress intended that such requests would take
precedence over those that do not qualify for such treatment.  Fulfillment of the legislative intent
cannot be characterized as a burden on any party's interests.

### D. The Public Interest Favors the Requested Relief

 The final criterion for the issuance of a preliminary injunction is clearly satisfied in this
case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the
general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville
Port Authr.*, 556 F.2d at 59 (D.C. Cir. 1977).  Likewise, it is "axiomatic that an 'agency is
required to follow its own regulations.'" *Edmonds v. FBI*, C.A. No. 02-1294, 2002 U.S. Dist.
LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*,

117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence is all that Plaintiff seeks here.  The

public interest will also be served by the expedited release of the requested records, which will

further the FOIA's core purpose of "shedding light on an agency's performance of its statutory

duties."  *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773

(1989).  As this Court has noted, "[t]here is public benefit in the release of information that adds

to citizens' knowledge" of government activities.  *Ctr. to Prevent Handgun Violence v. Dep't of

the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an

order directing Defendants to expedite the release of the requested information.

### III.   The Court Should Order the FBI to Process Plaintiff's FOIA Request Immediately

While Plaintiff recognizes that preliminary injunctive relief is not the norm in FOIA

cases, plaintiff nonetheless submits that such relief is appropriate when, as in this case, an agency

has denied a well-founded request for expedited processing.  Congress expressly required

agencies to make determinations on such requests within ten calendar days, 5 U.S.C. §

552(a)(6)(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5

U.S.C. § 552(a)(6)(E)(iii).  The legislative mandate that disputes over expedited processing

should be quickly resolved would be frustrated if aggrieved requesters were required to remain

idle for twenty days after initiating suit before moving for partial summary judgment.  Fed. R.

Civ. P. 56(a).[7]  As such, claims of entitlement to expedited processing are appropriately

---

[7] Judicial resolution of the expedited processing issue would not resolve all issues raised in the
complaint concerning defendant DOJ.  Once the question of processing time is resolved, the
Court would retain jurisdiction to review the completeness and propriety of DOJ's substantive
determination of Plaintiff's FOIA request.  *See Open America v. Watergate Special Prosecution
Force*, 547 F. 2d 605 (D.C. Cir. 1976).

addressed through motions for preliminary relief.[8]

Likewise, the appropriate form of relief is clear.  The applicable DOJ regulations dictate the manner in which FOIA requests requiring expedition must be processed.  The regulations provide that DOJ components "ordinarily shall respond to requests according to their order of receipt," 28 C.F.R. § 16.5(a), but that requests "will be taken out of order and given expedited treatment whenever it is determined that they [meet the criteria for expedited processing]."  *Id*. § 16.5(d)(1).  "If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable."  *Id*. § 16.5(d)(4).  The Court should order Defendant DOJ and the FBI to take whatever steps are necessary to complete the processing of Plaintiff's requests as expeditiously as possible.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

---

[8] In *Electronic Privacy Information Center v. Dep't of Justice*, C.A. No. 03-2078 (D.D.C. Oct. 20, 2003) (order denying preliminary injunction) (attached to Hofmann Dec. as Exhibit 11), Judge Robertson denied Plaintiff's motion for a preliminary injunction, *sua sponte*, before the government had submitted a response.  Judge Robertson wrote that "[a]n injunction restraining the denial of a request . . . is a writ of mandamus" and that "[t]he showing offered by plaintiff in support of its motion does not address the quintessential element of mandamus, that the official act demanded by the movant be nondiscretionary."  Plaintiff respectfully submits that the Court's conclusion was in error.  Although the Court cited no authority in its brief order, the proposition that requests for mandatory injunctions are generally judged by the same principles as requests for mandamus derives from cases that are inapposite here.  *See, e.g., Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("a request for an injunction *based on the general federal question statute* is essentially a request for a writ of mandamus") (emphasis added).  The FOIA expressly provides for grants of injunctive relief, 5 U.S.C. § 552(a)(4)(B), and the D.C. Circuit has held that agency denials of requests to expedite are subject to *de novo* review.  *Al-Fayed*, 254 F.3d at 308.  Indeed, the court of appeals in *Al-Fayed* applied a preliminary injunction standard and never suggested that a mandamus standard should apply to claims like the one Plaintiff raises here.

Respectfully submitted,


_____

MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION
      CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** *et al.***,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**O R D E R**

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction, Defendant

DOJ's response, the entire record and for good cause shown; it is this _____ day of June, 2004:

ORDERED that defendant DOJ (and its component FBI), its officers, agents, servants

and employees are hereby enjoined from continuing to deny Plaintiff expedited processing of its

Freedom of Information Act dated May 6, 2004; and it is

FURTHER ORDERED that defendant DOJ (and its component FBI), its officers, agents,

servants and employees shall place Plaintiff's request in the FBI's expedited processing queue

ahead of any requests received subsequent to May 6, 2004, and shall take all steps necessary to

complete the processing of Plaintiff's request within the same period of time that processing

would have been completed had the FBI not denied Plaintiff's request for expedition; and it is

FURTHER ORDERED that this Order shall remain in force until further Order of this

Court.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Marcia Hofmann
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009

Mark E. Nagle
Chief, Civil Division
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, DC 20001