**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ELECTRONIC PRIVACY | : | | |
| INFORMATION CENTER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0944 (RMU) |
| | : | | |
| v. | : | Document No.: | 21 |
| | : | | |
| DEPARTMENT OF HOMELAND | : | | |
| SECURITY *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING THE PLAINTIFF'S REQUEST FOR *IN CAMERA* INSPECTION OF
DOCUMENTS**

## I.  INTRODUCTION

The plaintiff, the Electronic Privacy Information Center ("EPIC") brings this action

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522 *et seq.*, to compel the

defendants, the Department of Homeland Security ("DHS"), the Transportation Security

Administration ("TSA"), and the Department of Justice ("DOJ"), to disclose various documents

concerning the government's attempts to acquire passenger data from airlines.  This matter is

before the court on the defendants' motion for summary judgment and on the plaintiff's request

for an *in camera* inspection of withheld documents.  Because the DOJ search for documents was

adequate and because the court does not have enough information to decide whether some

documents are properly withheld pursuant to the FOIA exemptions, the court grants in part and

denies in part the defendants' motion for summary judgment.  Because *in camera* review of

withheld documents is not necessary at this time, the court denies the plaintiff's request for an *in camera* inspection. The court also orders the DHS and the TSA to submit a revised *Vaughn* index[1] consistent with this memorandum opinion.

## II. BACKGROUND

### A. Factual Background

After the September 11, 2001 terrorist attacks, the TSA, an agency within the DHS, began developing a new system, the Computer Assisted Passenger Prescreening System ("CAPPS II"), to confirm passenger identities and identify terrorists or individuals with terrorist connections. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 2. While CAPPS II was still in development, the media raised concerns about TSA's "efforts to obtain detailed passenger data from airlines." *Id.* at 3. For example, Wired News reported that in September 2002, TSA facilitated the transfer of five million passenger itineraries from JetBlue Airways to a contractor working for the Department of Defense for testing of "a Pentagon project unrelated to airline security." *Id.* at 4 (citing Ryan Singel, *JetBlue Shared Passenger Data*, WIRED NEWS, Sept. 18, 2003). This media coverage provoked several class action lawsuits against JetBlue, as well as internal investigations by the DHS Privacy Office and Army Inspector General. The DHS Privacy Office's final report on the investigation concluded that the TSA had indeed assisted the Department of Defense in obtaining airline passenger information from JetBlue. *Id.* The Privacy Office also found that, although the TSA had also sought and received offers of passenger data from other airlines for

---

[1]      A *Vaughn* index is a document that describes withheld or redacted documents and explains why each withheld record is exempt from disclosure. *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

the purpose of testing CAPPS II, those airlines later rescinded their offers, and CAPPS II was never tested with passenger data.  *Id.* at 4-5.  Ultimately, "the report concluded that no TSA employees had violated the Privacy Act by facilitating transfer of passenger data."  *Id.* at 5.

Since the release of the DHS Privacy Office's report, several airlines publicly admitted to providing passenger data to companies vying for TSA contracts to assist in the development of a passenger screening program.  *Id.* at 5.  In June 2004, TSA acknowledged that at least eight airlines have released passenger data.  *Id.* at 6.  The DHS Privacy Office is currently investigating the circumstances surrounding the data transfers.  *Id.* at 7 (citing Defs.' Mot., Withnell Decl. ("Withnell Decl.") ¶ 55).

### B.  Procedural Background

The plaintiff is a non-profit organization dedicated to informing the public about privacy and civil liberties issues.  Compl. ¶ 3.  In 2003 and 2004, the plaintiff filed three FOIA requests with the defendants soliciting information about the transfer of airline passenger information to the government following the September 11 attacks.  The plaintiff now seeks information from the Federal Bureau of Investigation ("FBI"),[2] the DHS, and the TSA pertaining to the access and use of air passenger data by government agencies.  Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 2. On June 9, 2004, the plaintiff filed the instant suit, alleging that the FBI's search for documents was inadequate and that the DHS and the TSA improperly withheld documents, and requesting an *in camera* review of the withheld documents.  On January 19, 2005, the defendants filed their motion for summary judgment.  The court now turns to that motion.

---

[2]       The Federal Bureau of Investigation ("FBI")  is a part of the Department of Justice ("DOJ").  *See Am. Civil Liberties Union of Northern Cal. v. Dep't of Justice*, 2005 WL 588354, at *3 (N.D.Cal., 2005. Mar 11, 2005).

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of any doubt as to the existence of any genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA.  5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't*

4

*of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency may meet this burden by providing

the requester with a *Vaughn* index, adequately describing each withheld document and

explaining the exemption's relevance.  *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820

(fashioning what is now commonly referred to as a "*Vaughn* index").

> The court may grant summary judgment to an agency on the basis of its affidavits if they:
>
> [(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  While an agency's

affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence

of bad faith.  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir.

1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  But such

evidence cannot be comprised of "purely speculative claims about the existence and

discoverability of other documents."  *Id.*

### B.  Defendant DOJ's Search was Reasonable

### 1.  Legal Standard for Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may

challenge the adequacy of the agency's search by filing a lawsuit in the district court after

exhausting any administrative remedies."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999).  To prevail on summary judgment, "the agency must demonstrate beyond

material doubt that its search was reasonably calculated to uncover all the relevant documents."

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotations

and citations omitted).   An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information.   *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir., 1990)).   The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable.   *Oglesby*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986); *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996)).   The agency need not search every record in the system or conduct a perfect search.   *SafeCard Servs., Inc.*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 952, 956.   Nor need the agency produce a document where "the agency is no longer in possession of the document[] for a reason that is not itself suspect."   *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable.   *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68).   Again, while an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith.   *SafeCard Servs.*, 926 F.2d at 1200.   But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*   If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate.   *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

## 2.  The DOJ's Search for Responsive Documents

The plaintiff argues that the DOJ's search was inadequate because publicly available information suggests that the search should have uncovered additional documents and because the FBI acknowledged that it had acquired passenger data through a federal grand jury subpoena. The plaintiff relies primarily on a *New York Times* article in which an anonymous FBI official states that the Bureau subpoenaed airline companies for passenger data.  Pl.'s Opp'n at 15-16. The plaintiff argues that the Bureau's failure to locate copies of those subpoenas or records relating to their issuance shows the inadequacy of its search.  *Id.* at 16.  Additionally, the plaintiff contends that, in light of the testimony of airline executives before the 9/11 Commission stating that they cooperated with the FBI after the September 11 attacks, the FBI's failure to locate "evidence of communications or cooperation between the FBI and the airlines" calls the sufficiency of the search into question.  *Id.* at 16-17.  Finally, the plaintiff suggests that an adequate search would have yielded information describing how the government acquired the data, not simply the data itself.  *Id.* at 17.

Contrary to the plaintiff's assertion, the fundamental issue in assessing the adequacy of the government's search is not whether any responsive documents might exist, but rather, whether the government's search for responsive materials was adequate.  *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).  A search is not unreasonable simply because it fails to produce all relevant material.  *Meeropol*, 790 F.2d at 952-53.  "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003).  Moreover, in contrast to the cases in which courts have denied summary judgment  – including the principal case cited

by the plaintiff – the plaintiff has not indicated where else the FBI could or should have searched.[3]  *See, e.g., Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993); *Campbell*, 164 F.3d at 28; *Valencia-Lucena*, 180 F.3d at 327; *Iturralde*, 315 F.3d at 315; *Defenders of Wildlife v. U.S. Dep't of Agric.,* 311 F.Supp.2d 44, 54 (D.D.C. 2004); *Elec. Privacy Information Ctr. v. FBI*, C.A. No. 00-19849 (JR) slip. op. at 2 (D.D.C. Mar. 25, 2002).  In other words, the plaintiff "has not demonstrated that the FBI should have proceeded any differently than it did." *Raulerson v. Ashcroft*, 271 F.Supp.2d 17, 22 (D.D.C. 2002).

The court is satisfied that the DOJ's search was "reasonably calculated to uncover all the relevant documents." *Nation Magazine,* 71 F.3d at 890.  David M. Hardy, Section Chief of the Record/Information Dissemination Section in the Records Management Division at FBI Headquarters ("FBIHQ") in Washington, DC.,[4] explains that the FBI conducted a three part search.  Defs.' Mot., Hardy Decl. ("Hardy Decl.") ¶ 1.  First, the FBI used the terms "Airline Passenger Data," "Airline Passenger," and "Airlines Data" to search its computerized Central

---

[3]       Indeed, the plaintiff has not offered evidence that documents were created and maintained by the FBI; it merely infers their existence based on the statements of airline executives and a newspaper article.  When the description of the defendant's search is sufficiently detailed, a claim that certain documents "must exist" is insufficient to raise a material question of fact with respect to the adequacy of the agency's search.  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 n.13 (D.C. Cir. 1990) (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)).

[4]       David M. Hardy's declaration was not notarized, although it was subscribed to as true under penalty of perjury.  A federal statute specifically permits use of unsworn declarations in all cases in which affidavits would otherwise be required.  28 U.S.C. § 1746; *Judicial Watch v. Clinton*, 880 F.Supp. 1, 11 n.6 (D.D.C.1995).

8

Records System ("CRS").[5]  *Id.* ¶ 17.  The FBI also searched the FBIHQ offices most likely to have potentially responsive records, *id.*, and requested information from "all FBIHQ Divisions" regarding the search for documents responsive to the plaintiff's request.  *Id.* ¶ 18.  Second, the FBI contacted NASA because the plaintiff's FOIA request included a copy of an email from NASA indicating that the FBI had obtained passenger data from Northwest Airlines.  Hardy Decl. ¶ 19.  As a result of its communication with NASA, the FBI contacted a special agent in one of its field offices.  The special agent indicated that field offices collecting airline data forwarded all of their materials to FBIHQ.  *Id.* ¶ 19-20.  Third, the FBI's Cyber Division searched PENTTBOMB, a computerized database containing "voluminous" records related to the investigation of the September 11 attacks.  *Id.* ¶ 17, 25.  The search yielded twelve pages summarizing the responsive records in PENTTBOMB.  While the DOJ admits that there may be other responsive information in PENTTBOMB, Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. ("Defs.' Reply") at 24, it claims that it is impossible to extract the data in its original form because it has been "intertwined" with other data in the database .  Hardy Decl. ¶ 26.  Because the court concludes that the DOJ's search was reasonable and because the plaintiff has raised no positive indications of overlooked materials, the court holds that the FBI's search in response to the plaintiff's FOIA request was adequate.[6]

---

[5]       Hardy explains that, "the generalized nature of EPIC's FOIA request, *i.e.* 'Airline Passenger Data,' does not lend itself readily or naturally" to a search of the FBI's investigative files. Defs.' Mot. for Summ. J. ("Defs.' Mot."), Hardy Decl. ("Hardy Decl.") ¶ 17.  In addition, "the subject matter of the request is relatively recent, and certain of the potentially responsive records may not have yet been indexed to the [Central Records System]."  *Id.*

[6]       The plaintiff does not challenge any of the exemptions claimed by the FBI, and the court has no reason to believe that FBI documents are not exempt from disclosure.  The DOJ's declaration, in conjunction with the copies of the twelve redacted pages released to the plaintiff, explains how the withholdings are dispersed throughout the document.  *See* Hardy Decl., Ex. G.

## C. DHS and TSA Withholdings Pursuant to the FOIA Exemptions[7]

The defendants withheld documents and portions of documents pursuant to FOIA Exemptions 2, 3, 4, 5, 6, 7(A) and 7(C). Defs.' Mot., Statement of Material Facts ¶ 20-26. A court cannot grant summary judgment unless the defendant's *Vaughn* index provides a detailed description of the withheld information, the exemption claimed for withholding the information, and the reasons supporting the application of the exemption to the withheld material.[8] *Vaughn*, 484 F.2d at 827. Agency statements in the *Vaughn* index cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Oglesby*, 79 F.3d at 1176. Additionally, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. Inc., v. U.S. Dep't of Air Force*, 566 F.2d 252, 260 (D.C. Cir. 1977). This requirement is known as the segregability requirement. *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). Finally, if the defendants have withheld information on the basis of multiple exemptions, the court need only rely on one exemption for each piece of exempted material. *Kanter v. Dep't of State*, 479 F.Supp.921, 928 n.9 (D.D.C. 1979).

---

[7]     The plaintiff is not challenging the adequacy of DHS' and TSA's search, but rather the legitimacy of the redactions and withheld documents. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 13; Defs.' Mot. at 12, Ex. B. Accordingly, the court focuses its analysis on the exemptions claimed by the DHS and TSA.

[8]     The defendants maintain that the court should read the submitted *Vaughn* index in conjunction with the Declaration and Supplemental Declaration of Elizabeth Withnell, Chief Counsel to the DHS Privacy Office. Defs.' Reply at 3. It was once the rule in this circuit that an agency's *Vaughn* index must consist of a single document. *Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). The Court of Appeals has since advised, however, that the single document rule should be applied with common sense: "So long as the affidavits [or declarations] interlock without confusion and were clearly drafted with each other in mind, there is no reason that they can't be thought of as a single document." *Afshar v. Dep't of State*, 702 F.2d 1125, 1144 (D.C. Cir. 1983).

## 1. Exemption 2 Withholdings

Exemption 2 of FOIA allows the withholding of records that are "related solely to the internal personnel rules and practices of the agency."  5 U.S.C. § 552(b)(2).  The defendants' *Vaughn* index, read in conjunction with the Withnell Declaration, demonstrates that redacted portions of the documents are properly withheld under Exemption 2 because the information would allow access to an otherwise secure database and internal agency telephone numbers and access codes.  *See* Defs.' Mot., *Vaughn* index ("*Vaughn* index") at 18; Withnell Decl. ¶ 36, Ex. R.  Additionally, the plaintiff does not challenge the defendants' Exemption 2 withholdings. Pl.'s Opp'n at 13.  The court therefore grants the defendants' summary judgment motion with respect to all Exemption 2 withholdings.

## 2. Exemption 3 Withholdings

Exemption 3 allows an agency to withhold or redact information prohibited from disclosure by another statute if the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  In other words, the statute must "on its face, exempt matters from disclosure."  *Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).

In the instant case, the defendants claim that some documents[9] are exempt from

---

[9]     TSA document AA and the factual information in TSA documents Z, BB, CC, and UU have been withheld under Exemption 3 and Exemption 4.  Defs.' Mot., *Vaughn* index ("*Vaughn* index") ¶¶  Z, AA, BB, CC, UU.  The plaintiff has conceded all of the Exemption 4 withholdings claimed by the defendants.  Pl.'s Opp'n at 13.  Accordingly, the only documents for which an Exemption 3 analysis is necessary are TSA documents E, LL, and TT.  *See Kanter v. Dep't of State*, 479 F.Supp. 921, 928 n.9 (D.D.C. 1979).

disclosure pursuant to 49 U.S.C. § 114(s) and 49 U.S.C. § 40119(b).[10]  These statutes prohibit the

disclosure of information if the Under Secretary of the TSA or the Secretary of Transportation

decide that disclosing the information would (1) be an unwarranted invasion of personal privacy,

(2) reveal a trade secret or privileged or confidential commercial or financial information, or (3)

be detrimental to the security of transportation.  49 U.S.C. § 114(s) and 49 U.S.C. § 40119(b).

TSA document LL consists of data elements in JetBlue's passenger name records and, as such, it

includes information that is "potentially useful for an airline screening program."  Defs.' Reply,

Withnell Supp. Decl. ("Withnell Supp. Decl.") ¶ 4.  The document was marked as "confidential"

by the defendants because JetBlue voluntarily provided the information to the TSA to develop an

aviation screening program.  *Id.*  Accordingly, the court holds that TSA document LL was

properly withheld.

TSA document TT "constitutes selection criteria proposed to be used for aviation

screening," and was marked "sensitive security information" in the defendants' *Vaughn* index.

*Vaughn* index at 15.  Because the plaintiff has agreed to exclude documents marked "sensitive

security information" from the scope of the litigation, Pl.'s Mot. at 13, and because disclosure of

document TT could be detrimental to transportation security, the court holds that document TT

was properly withheld.

The court, however, does not have enough information to gauge whether TSA document

E falls under Exemption 3.  The *Vaughn* index for this document merely states that the document

constitutes "sensitive security information."  Although the defendants are not required to describe

---

[10]        The plaintiff does not dispute the defendants' use of these statutes in the Exemption 3
context.  Pl.'s Mot. at 19.  Further, another district has held that these statutes qualify as Exemption 3
statutes.  *See Gordon v. FBI*, 2004 WL 1368858, *2 (N.D. Cal. 2004).

the withheld portions in so much detail that it reveals the sensitive security information itself, they must provide a more adequate description in order to justify the application of the exemption to the withheld material.  *Mead Data* 566 F.2d at 261; *Vaughn*, 484 F.2d at 827. Accordingly, the court denies summary judgment with respect to document E and orders the defendant to submit a supplemental *Vaughn* index with a more detailed description of the document's contents.

### 3.  Exemption 4 Withholdings

Exemption 4 of FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).  The plaintiff concedes all of the Exemption 4 withholdings claimed by the defendants.[11]  Pl.'s Opp'n at 13. The court has also concluded that TSA document LL, for which Exemption 4 was invoked in the defendants' reply, was properly withheld in full under Exemption 3.  When read in conjunction with the Withnell declarations, the defendants' *Vaughn* index demonstrates that the defendants have not used Exemption 4 to withhold any reasonably segregable information.[12]  *Vaughn* index at 1, 8-11, 13-15, 25-26; Withnell Decl. ¶ 39-41, 52, 59; Withnell Supp. Decl. ¶ 12, 14.  For the foregoing reasons, the court grants summary judgment with respect to the defendants' withholdings under Exemption 4.

---

[11]     Pursuant to Exemption 4, the defendants have withheld information in TSA documents A, Z, AA, BB, CC, PP, QQ, RR, SS, UU and the Chief Privacy Officer's document S.  Defs.' Mot., Statement of Material Facts ¶ 22.

[12]     The D.C. Circuit requires district courts to check for compliance with FOIA's segregability requirements even if the issue has not been raised by the parties.  *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (holding that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.")

### 4. Exemption 5 Withholdings[13]

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit have both construed Exemption 5 "to exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin*, 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears*, 421 U.S. at 149. At issue in this case are the deliberative-process and the attorney-client privileges invoked by the defendant.

### a. Deliberative-Process Privilege

The general purpose of the deliberative-process privilege is to "prevent injury to the

---

[13]     The plaintiff argues that the defendants withheld information under Exemption 5 based on their knowledge of the plaintiff's intended use of the information. Pl.'s Opp'n at 21-22. Although Withnell stated that she knew the plaintiff wanted to use the information to demonstrate that some airlines provided passenger name records to the government, *id.* (citing Withnell Decl. ¶ 46), Withnell explains that she "did not cite the reason plaintiff wanted the documents as part of the rationale for invoking Exemption 5, but only because it helped to describe the scope of the request." Withnell Supp. Decl. at 5. The plaintiff has not introduced any evidence that would rebut the good faith presumption customarily afforded agency affidavits in FOIA cases. *SafeCard*, 926 F.2d at 1200. Indeed, the plaintiff does not cite Withnell's statement in the declaration as evidence of bad faith but only as a sign that the Exemption 5 withholdings require extra consideration. Further, the court cannot ignore the obvious assumption that, if Withnell and the defendants were truly trying to withhold information because they feared the plaintiff's use of it, they would not advertise their supposedly nefarious acts in a court document. The court therefore concludes that the plaintiff's intended use of the information did not serve as the basis for the exclusion of any information.

quality of agency decisions." *Sears*, 421 U.S. at 151.  The three specific policy objectives underlying this privilege are: (1) to encourage open and frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action.  *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc).  In essence, the privilege protects "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (internal quotations omitted).  Thus, the deliberative-process privilege ensures that government agencies are not "forced to operate in a fishbowl."  *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

　　To invoke the deliberative-process privilege, the defendant must establish two prerequisites.  *Id.*  First, the communication must be predecisional; in other words, it must be "antecedent to the adoption of an agency policy."  *Jordan*, 591 F.2d at 774; *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991).  In determining whether a document is predecisional, an agency does not necessarily have to point specifically to a final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process."  *Coastal States*, 617 F.2d at 868.  In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the

deliberative-process privilege protections of Exemption 5 may be applicable. *Id.*; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or express opinions on legal or policy matters." *Vaughn*, 523 F.2d at 823-24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).

The defendants meet the first prerequisite for claiming the deliberative-process privilege with respect to TSA documents B, D, J, K, Q, S, T, U, V, X, Y, DD, GG, HH, II, JJ, NN, OO, ZZ, AAA, EEE, and FFF by demonstrating that the documents are predecisional.[14] The defendants prepared these documents to assist in the development and testing of the CAPPS II program. *See* Defs.' *Vaughn* index; Withnell Decl. ¶¶ 45-46; Withnell Supp. Decl. ¶ 9. Even though the defendants abandoned the CAPPS II program, the withheld information represents intermediate steps in the process that created the CAPPS II program. *See Coastal States*, 617 F.2d at 866, 868-869. Contrary to plaintiff's assertion that materials lose their Exemption 5 protection once a final decision is taken, it is the document's role in the agency's decision-

---

[14] The court will not analyze the applicability of Exemption 5 with regard to TSA documents Z, BB, LL, TT, UU, and BBB because the court has determined that this material has been properly withheld under different FOIA Exemptions. *Kanter*, 479 F.Supp. at 928 n.9.

making process that controls.[15]  *Russell*, 682 F.2d 1048.  Similarly, TSA documents C, F, G, H, I,

L, M, N, O, P, R, W, EE, FF, MM, VV, and HHH are also predecisional because, according to

the *Vaughn* index, they were prepared to assist the TSA with certain decisions taken by the

agency.  Many of the Chief Privacy Officer ("CPO")[16] documents at issue were generated during

the CPO's investigation of the TSA's role in the transfer of airline passenger data from the

airlines to the Department of Defense.[17]  These documents are predecisional because they contain

opinions solicited and expressed prior to the issuance of the CPO's final report.

    The defendants also satisfy the second prerequisite for the deliberative process privilege

with respect to TSA documents B, D, J, K, Q, S, T, U, V, X, Y, DD, GG, HH, II, JJ, NN, OO,

ZZ, AAA, EEE, and FFF because these documents contain recommendations and discussions of

proposed actions relating to the CAPPS II program.  *Coastal States*, 617 F.2d at 866 (holding that

the deliberative process privilege covers drafts, recommendations, proposals, personal opinions

and debates about a policy).  Rather than reflecting binding agency action, these documents

reflect the give-and-take of the consultative process.  As such, these documents represent

precisely the kind of information that Exemption 5 was designed to protect.  Disclosure of such

---

[15]    The plaintiff argues documents related to the CAPPS II program are not predecisional because the termination of the CAPPS II program constitutes a final agency action.  Pl.'s Opp'n at 22.

[16]    The court accepts the defendants' invocation, in its reply, of the deliberative process privilege with respect to the Chief Privacy Officer's ("CPO") documents EE, GG, HH, and II.  Withnell Supp. Decl. ¶ 5-8.  The defendants are not adding new exemptions to the withheld information; they are simply clarifying withholdings for which they used the deliberative process rationale.  Because the plaintiff was able to surmise that the defendants were using the deliberative process privilege for these documents, Pl.'s Opp'n at 24, it is not unfair to the plaintiff to allow the defendant to label their withholdings more explicitly in their reply.  *See Judicial Watch of Fla.*, *Inc. v. Dep't of Justice*, 102 F.Supp.2d 6, 12 (D.D.C. 2000).

[17]    Several of the CPO's documents are drafts, but the plaintiff has agreed to exclude the "numerous drafts" in CPO document A from the scope of this litigation.  Pl.'s Opp'n at 13 n.7.

information could potentially stifle "frank and honest communication" within an agency. *Id.*

TSA documents C, F, G, H, I, L, M, N, O, P, R, W, EE, FF, MM, VV, and HHH are also

deliberative because, according to the *Vaughn* index, they are either drafts or contain opinions.

Many of the documents from the CPO are also deliberative because they are materials she used to

complete the investigation on the release of passenger data.[18]  Accordingly, the court grants

summary judgment in favor of the defendant with respect to TSA documents B–D, F–Y, DD–JJ,

MM–OO, VV, ZZ, AAA, EEE, FFF, and HHH, and with respect to CPO documents A–D, J, N,

P-S, U, X, CC, EE and GG–JJ.[19]

   At times, however, the defendants provide insufficient detail regarding the content of

withheld information to support a motion for summary judgment.  Accordingly, the court holds

that the defendants must submit a revised *Vaughn* index with more comprehensive and

justificatory descriptions of TSA documents E, KK, PP, QQ, RR, SS, WW, XX, YY, DDD, and

GGG.  Because the defendants invoked both Exemption 4 and the deliberative process privilege

of Exemption 5 to withhold information in TSA documents PP, QQ, RR and SS, *Vaughn* index

---

[18]     The plaintiff correctly observes that handwritten notes do not qualify for protection under the deliberative process privilege simply because they are handwritten. Pl.'s Opp'n at 23. Handwritten notes that do not reflect the preliminary thoughts of the agency decisionmaker or other agency personnel do not warrant Exemption 5 protection. *Clinton*, 880 F. Supp. at 13.

[19]     The court is also satisfied that the defendants have complied with FOIA's segregability requirement with respect to these documents. *See generally Vaughn* index; Withnell Decl. ¶¶ 42–46; Withnell Supp. Decl. ¶¶ 5–9.  Also, the court agrees with the defendants that the plaintiff's argument that non-exempt factual information was improperly withheld under the deliberative process privilege is moot because that information is already exempt pursuant to other FOIA exemptions.  Withnell Supp. Decl. ¶¶ 13-14.  Further, the court agrees with the defendants' conclusion that information such as the CPO's signature block is not "reasonably segregable."  *See, e.g.* Defs.' *Vaughn* index at 4.  Courts do not require agencies "to commit significant time and resources to separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F.Supp.2d 19, 38 (D.D.C. 2000) (citing *Mead Data Cent., Inc., v. U.S. Dep't of Air Force*, 566 F.2d 252, 261 n.55 (D.C. Cir. 1977)).

¶ at 13-15, the court holds that defendants must submit a more detailed *Vaughn* index explaining which portions of these documents are factual and which are deliberative, and correlating the justifications for each exemption to the applicable portions.

The court also does not have information to evaluate the propriety of applying the deliberative process privilege to CPO documents O, V, Y, and Z because the defendants' listings fail to describe the content of the handwritten notes. *Id.* ¶ O, V, Y, Z. Finally, the defendants have not indicated which FOIA exemption they are using to withhold CPO documents E, F, and G. In their revised *Vaughn* index, the defendants must explicitly invoke a FOIA exemption and provide a justification for these particular withholdings. Similarly, the defendants use Exemption 5 to withhold information in CPO documents K, L, and M, but they fail to specify whether they rely on the deliberative process or attorney-client privilege. *Vaughn* index at 23. The court rules that the defendants must specify which privilege they are using to withhold CPO documents E, F, G, K, L, and M before the court can evaluate their withholdings.

### b.  Attorney-Client Privilege

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.*, 566 F.2d at 252. The rationale underlying the privilege is that lawyers will be best able to advocate and offer advice if they are "fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation. *See, e.g., Mead Data Cent., Inc.*, 566 F.2d at 252-53; *Crooker v. Internal Revenue Serv.*, No. 94-0755, 1995 WL 430605, at *7 (D.D.C. April 27, 1995).

19

Although it principally applies to facts divulged by a client to his attorney, this privilege also

encompasses any opinions given by an attorney to his client based on, and thus reflecting, those

facts as well as communications between attorneys that reflect client-supplied information.  *See*

*Coastal States*, 617 F.2d at 863 (finding that courts can infer confidentiality when the

communications suggest that "the government is dealing with its attorneys as would any private

party seeking advice to protect personal interests").  The privilege applies to confidential

communications made to an attorney by both high-level agency personnel and lower-echelon

employees.  *Upjohn Co.*, 449 U.S. at 392-97.

The defendants invoke Exemption 5's attorney-client privilege to protect messages and

attachments sent between a TSA employee and attorneys in TSA's Office of General Counsel.

Withnell Decl. ¶ 43.  The plaintiff agreed to exclude these withholdings from the scope of

litigation.  Pl.'s Opp'n at 13.  Additionally, the defendants' *Vaughn* index, read in conjunction

with the Withnell Declarations, demonstrates compliance with the segregability requirements of

FOIA, *see, e.g., Vaughn* index at 29.  Accordingly, the court grants summary judgment with

respect to the defendants' withholdings based on Exemption 5's attorney-client privilege.[20]

### 5.  Exemption 6 Withholdings

### a.  Legal Standard for Exemption 6

Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). "[S]imilar files" are broadly defined to include any

---

[20]     These withholdings are in TSA documents F, H, I, O, and W, and CPO documents H, J, T, S, FF, and GG.  *See Vaughn* index; Withnell Decl. ¶ 43.

"[g]overnment records on an individual which can be identified as applying to that individual."

*See U.S. Dep't. of State v. Wash. Post Co.*, 456 U.S. 595, 601-602 (1982).  To determine whether

a disclosure would constitute a clearly unwarranted invasion of personal privacy, the court must

weigh the privacy interests in nondisclosure against the public interests in disclosure.  *Nat'l Ass'n*

*of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citing *Nat'l Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  Individuals have a privacy interest in

personal information even if it is not of an embarrassing or intimate nature. *See Wash. Post*, 456

U.S. at 600 (stating that "information such as place of birth, date of birth, date of marriage,

employment history, and comparable data is not normally regarded as highly personal, and yet

. . . such information . . . would be exempt from any disclosure that would constitute a clearly

unwarranted invasion of personal privacy").  The quantum of the public's interest in disclosure

depends on the degree to which disclosure would shed light on an agency's performance of its

statutory duties and its compliance with the law. *Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C. Cir.

1991).  In assessing the public interest, the court must examine "the nature of the requested

document and its relationship to the basic purpose of [FOIA] to open agency action to the light of

public scrutiny . . . [and official] information that sheds light on an agency's performance of its

statutory duties" merits disclosure.  *Reporters Comm.*, 489 U.S. at 773 (citation omitted).  The

purposes of FOIA are "not fostered," however, "by disclosure of information about private

citizens that is accumulated in various governmental files but that reveals little or nothing about

an agency's own conduct." *Id.*

### b.  Identifying Information of Governmental Employees[21]

The defendants use Exemption 6 to withhold the names and other identifying information of government employees (mainly DHS and TSA personnel) contained in the documents responsive to the plaintiff's request.[22]  *See Vaughn* index; Withnell Decl. ¶ 47; Withnell Supp. Decl. ¶ 16.  The defendants contend that release of this information will make employees vulnerable to harassment and will not help the plaintiff to understand the operations of the government.  Withnell Decl. ¶ 47.  The plaintiff argues that Exemption 6 does not apply in this context because federal employees have only a "negligible" privacy interest and the threatened privacy invasion cited by the defendants is only speculative.  Pl.'s Opp'n at 26-27.  The court disagrees and grants summary judgment in favor of the defendants with respect to the names withheld pursuant to Exemption 6.

The privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that "could conceivably subject them to annoyance or harassment in either their official or private lives."  *Lesar v. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980); *see also Nix v. United States*, 572 F.2d 998, 1006 n.8 (4th Cir. 1978) (noting that, to implicate a federal employee's privacy interest under FOIA, harassment does not have to rise to the level that life or physical safety is in danger).  The fact

---

[21]    The plaintiff has agreed to exclude the names and identifying information of non-governmental employees from the scope of this litigation.  Pl.'s Opp'n at 13.  The plaintiff has also conceded the withholdings made pursuant to exemption 7(C), except for the withholding of domain names and business identifiers.  Pl.'s Opp'n at 30.  Accordingly, the court is not analyzing whether names and contact information in the CPO documents were properly withheld under exemption 7(C).  *Kanter*, 479 F.Supp. at 928, n. 9.

[22]    The plaintiff has agreed not to challenge the defendants' invocation of Exemption 6 to withhold the names, phone numbers, addresses, and email user names of non-governmental employees.  Pl.'s Opp'n at 13 (citing Defs.' Mot., Ex. A).

that federal employees have an identifiable privacy interest in avoiding disclosures of

information that could lead to annoyance or harassment, however, does not authorize a "blanket

exemption" for the names of all government employees in all records.  *Baez v. Dep't of Justice*,

647 F.2d 1328, 1338 (D.C. Cir. 1980); *Lesar*, 636 F.2d at 487.  To justify their Exemption 6

withholdings, the defendants must show that the threat to employees' privacy is real rather than

speculative.[23]  *Rose*, 425 U.S. at 380 n.19.  In this case, the defendants explain that the threat to

the privacy of DHS and TSA personnel derives from the nature of their employment.[24]  As

"advocates for security measures that may be unpopular," DHS and TSA employees are likely to

experience annoyance or harassment following the disclosure of their involvement with the

---

[23]     Contrary to the plaintiff's assertion, the court can use case law concerning Exemption 7(C) to identify the privacy interests relevant to an Exemption 6 balancing test.  Pl.'s Opp'n at 26.  While Exemption 7(C), which deals with information found in law enforcement documents, has a lower threshold for justifying withholdings than Exemption 6, courts conducting a balancing test under Exemption 6 can still look to Exemption 7(C) cases for assistance in the identification of the interests at stake.  *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) (applying 7(c) case law to an Exemption 6 analysis); *see also Fed. Labor Relations Auth. v. Dep't of Treasury*, 884 F.2d 1446, 1451-52 (D.C. Cir. 1989) (noting that the difference between Exemptions 6 and 7(C) "goes only to the *weight* of the privacy interest needed to outweigh disclosure") (emphasis in original).

[24]     The defendants' explanation of the threat to DHS and TSA employees' privacy is most comprehensively set out in the Withnell Supplemental Declaration:

> DHS was . . . created to prevent and deter terrorist attacks and protect against and respond to threats and hazards to the United States.  That mission has the potential to place DHS employees in harm's way directly or indirectly.  Even employees who work on policy matters, as opposed to law enforcement activities, are not immune from unwarranted and unwanted contacts as a direct result of the work they do.  Accordingly, the agency takes pains to be transparent about its programs but much more opaque about its employees, because identifying those involved with DHS or its component agencies, including TSA, makes the individuals susceptible to harassment and unwarranted attention, whether it be to further criminal purposes or merely to vent misplaced frustrations.

Withnell Supp. Decl. ¶ 16.

CAPPS II program.[25]  Withnell Decl. ¶ 47.  Furthermore, unfettered access to the identities of

those who help to formulate policy for airline security screening programs could have substantial

security implications.[26]  Withnell Supp. Decl. ¶ 16.  The documents released by the defendants

will likely be published on the Internet once released to the plaintiff,[27] and it is likely that readers

of the plaintiff's reports, including media reporters as well as private individuals, would seek out

the employees mentioned for further information.  *See Southam News v. Immigration and*

*Naturalization Serv.*, No. 85 Civ. 2721, slip. op. at 3 (D.D.C. Aug. 30, 1989) (holding that the

"the only imaginable contribution that" personal identifying information could make "would be

to enable the public to seek out individuals" to question them).  This contact is the very type of

privacy invasion that Exemption 6 is designed to prevent.[28]

---

[25]     Courts have protected the identities of other governmental employees for similar reasons.
*See, e.g., Judicial Watch, Inc. v. Rossotti*, 285 F.Supp.2d 17, 30 (D.D.C. 2003) (allowing the Internal
Revenue Service to withhold the names of lower level employees).

[26]     Other sectors of the government have used a similar rationale to withhold employee
information.  *See* Department of Defense Director for Administration and Management Memorandum 1-
2 (Nov. 9, 2001), *available at www.defenselink.mil/pubs/foi/withhold.pdf* (explaining the post-September
11 Department of Defense policy of withholding personally identifying information of military and
civilian employees if disclosure would "raise security or privacy concerns").

[27]     The plaintiff disseminates information to the public in several ways: it "maintains a
heavily visited Web site" featuring summaries of privacy-related news and scanned images of documents
obtained under FOIA, publishes a bi-weekly electronic newsletter with a readership of over 15,000, and
publishes books on civil liberties and technology issues.  Withnell Decl., Ex. A.

[28]     The defendants cite two additional rationales for invoking Exemption 6 to protect DHS
and TSA employees.  First, they contend that many DHS employees "fear harassment and unwarranted
attention as a direct result of their work."  Withnell Supp. Decl. ¶ 16.  Second, they state that, "it is a
simple fact that, given the world security climate, federal employees, especially those involved in
homeland security, are at a heightened risk of harassment or endangerment."  *Id.*  The court does not base
its conclusion that the defendants have shown a "real" possibility of privacy invasion on either of these
statements.  An agency cannot establish that a threat to privacy exists based on an employee's subjective
fears of harassment.  Furthermore, in holding that the defendants can redact the names of DHS and TSA
employees mentioned in documents pertaining to the development of an airline screening program, the
court is not endorsing a blanket exemption for all federal employees involved in homeland security.

On the other side of the Exemption 6 balance, the public interest in learning the names of these lower-echelon employees is small. The plaintiff has not demonstrated that knowledge of the names of the employees involved in CAPPS II development will help them to understand how the agency performs its statutory duties. *Reporters Comm.*, 489 U.S. 749, 773. Names alone will not shed any light on how the agencies worked with the airlines. *See, e.g., Voinche v. FBI*, 940 F. Supp. 323, 330 (D.D.C. 1996) (finding that "there is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of the people mentioned" in agency documents); *see also Fed. Labor Rels. Auth. v. Dep't of Treasury*, 884 F.2d 1446, 1453 (D.C. Cir. 1989) (finding that the public interest in release of the names and home addresses of federal employees does not "outweigh the workers' significant interest in privacy"). Indeed, "information that does not directly reveal the operation or activities of the federal government 'falls outside the ambit of the public interest that the FOIA was enacted to serve.'" *Id.* at 1457 (quoting *Reporters Comm.*, 489 U.S. at 775).

Because the privacy interest of DHS and TSA employees in avoiding the unwanted contact or harassment that would result from the release of their names outweighs the public interest in disclosure, the court concludes that the defendants properly invoked Exemption 6 to redact the names of the federal employees included in the documents at issue.

### c.  Domain Names and Business Identifiers

The defendants also claim that, pursuant to Exemption 6, they properly withheld the

domain names of email addresses and the names of agencies and businesses[29] that cooperated

with the TSA.  Pl.'s Opp'n at 25; Withnell Supp. Decl. ¶ 16.  The defendants argue that once

other information in the document is redacted, the domain names and business identifiers by

themselves do not add anything "to the store of information responsive to plaintiff's request"[30]

and are not reasonably segregable.  Withnell Supp. Decl. ¶ 16.  The court, however, is unable to

analyze the defendants' arguments because they do not specify which documents (or portions of

documents) contain domain names or business identifiers, as opposed to individuals' names.

Furthermore, the defendants have already released documents to the plaintiff with redactions for

"personal identifiers" or "individual identities."  *See, e.g., Vaughn* index at 7, 13, 16-18.  It is

possible that these documents also contain domain names or business identifiers that, when read

in context, do actually add to the plaintiff's knowledge of the government's activities.[31]  The

court therefore denies the defendants' motion with respect to the withholding of domain names

and business identifiers under Exemption 6.  The defendants must submit a more detailed

*Vaughn* index in which they specify why domain names and business identifiers were withheld.

---

[29]      The defendants do not claim a need to protect the identities of the businesses themselves, for neither corporations nor business associations have privacy interests that can be protected under Exemption 6.  *See, e.g., Sims v. CIA*, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976); *Ivanhoe Citrus Ass'n v. Handley*, 612 F.Supp. 1560, 1567 (D.D.C. 1985).  Ultimately, then, the appropriateness of withholding identifying business information hinges on the segregability of the domain names and business identifiers.

[30]       The defendants also argue that this information, "together with a name[]," will identify employees or individuals who merit Exemption 6 protection.  Withnell Supp. Decl. ¶ 16.  Because the court has determined that the names of both federal and non-federal employees are exempt from disclosure under Exemption 6, this justification for withholding domain names and business identifiers is moot.

[31]      If  the non-exempt information is so interspersed that segregation will yield only meaningless snippets of words that add nothing to plaintiff's understanding of agency activity, the defendants should state as much in their revised *Vaughn* index.

### 6.  Exemption 7(A) Withholdings

Exemption 7(A) of FOIA permits the withholding of records or information compiled for law enforcement purposes, to the extent that the production of this information could reasonably be expected to interfere with enforcement proceedings.  5 U.S.C. § 552(b)(7)(A).  The defendants withheld documents pertaining to the CPO's investigation of the alleged transfer of PNR data from airlines and Global Distribution Services companies to TSA.  Withnell Decl. ¶ 55-57; *Vaughn* index at 30-31.  The plaintiff concedes all of the defendants' Exemption 7(A) withholdings but reserves the right to renew its request once the CPO completes her investigation.  Pl.'s Opp'n at 13.  Because the release of this information could undermine the effectiveness of the CPO's investigation, the court upholds the withholding of these documents in full and grants the defendants summary judgment with respect to their Exemption 7(A) withholdings.

### 7.  Exemption 7(C) Withholdings

FOIA's Exemption 7(C) protects records or information compiled for law enforcement purposes to the extent that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C) (2000).  The defendants used Exemption 7(C) to withhold the names and other identifying information of federal and non-federal employees mentioned in the CPO's documents.  Withnell Decl. ¶ 58; Withnell Supp. Decl. ¶ 16; *Vaughn* index.  The plaintiff concedes the defendants' 7(C) withholdings with respect to the names and contact information of all persons mentioned.  Pl.'s Opp'n at 30.  Domain names and business identifiers, however, are still in dispute.  Because the defendants have again justified their withholdings on segregability grounds, but neglected to describe them adequately, the court

denies their motion for summary judgment with respect for domain names and business

identifiers.  *See* Discussion III.C.5.c., *supra*.

### D.  *In Camera* Inspection is not Appropriate in this Case

The plaintiff has moved this court for an *in camera* inspection of the withheld documents.

FOIA authorizes courts to examine agency records *in camera* to determine the validity of a

defendant agency's withholdings but endorses the court with broad discretion in rendering its

decision.  5 U.S.C. § 552(a)(4)(B); *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir.

1998).  *In camera* inspection may be appropriate, for example, when "agency affidavits are

insufficiently detailed to permit meaningful review of exemption claims," *Spirko*, 147 F.3d at

996 (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)); when "the number of records

involved is relatively small, *Quinon*, 86 F.3d at 1228; when a discrepancy exists between an

agency's affidavit and other information that the agency has publicly disclosed, *Mehl v. Envtl.*

*Prot. Agency*, 797 F.Supp. 43, 46 (D.D.C. 1992); and "when the dispute turns on the contents of

the documents, and not the parties' interpretations of those documents." *Spirko*, 147 F.3d at 996

(quoting *Quinon*, 86 F.3d at 1228).

Ultimately, however, courts disfavor *in camera* inspection and it is more appropriate in

only the exceptional case.  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)

(explaining that FOIA's *in camera* review provision "is designed to be invoked when the issue

before the District Court could not otherwise be resolved"); *PHE, Inc. v. Dep't of Justice*, 983

F.2d 248, 252-53 (D.C. Cir. 1993) (noting that *in camera* review is "generally disfavored" but

permissible); *Animal Legal Def. Fund, Inc. V. Dep't of Air Force*, 44 F.Supp.2d 295, 304

(D.D.C. 1999) (observing that, "*in camera* review should not be resorted to as a matter of

course") (quoting *Quinon*, 86 F.3d at 1228).

The court concludes that *in camera* review is not necessary at this stage in the proceedings.  The defendants' descriptions and justifications for many of their withholdings are adequate.  The court permits the defendants an opportunity to first correct those that are not adequate by submitting a revised *Vaughn* index consistent with this memorandum opinion.  If the defendants' revised *Vaughn* index still does not meet the statutory requirements, the plaintiff may renew its request for *in camera* inspection.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion for summary judgment, denies the plaintiff's request for *in camera* inspection of documents, and orders defendants DHS and TSA to submit a revised *Vaughn* index with respect to the specified withholdings.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of July, 2005.

RICARDO M. URBINA
United States District Judge
